Ltjdeling, C. J.,
dissenting. .The relator alleges that he is the holdér of a number of the bonds of the State of Louisiana, which were acquired before maturity, for value and in due course of trade; that accepting the terms of the act of January 24, 1874, he presented said bonds to the Board of Liquidation, created by said act, to be exchanged according to the terms of said act and the constitutional amendments, but that said board refused to act in the matter, on the ground that act No. 11 of the General Assembly of 1875, prohibited them from funding said bonds until after the Supreme Court of the State shall have decided that they were valid obligations of the State. The relator alleges that act No. 11 is unconstitutional and null, and he asks for a mandamus to compel said Board of Liquidation to act on their application without reference to said act No. 11 of 1875, exercising the discretion vested in them by act No. 3 of January 24, 1874.
The only question' presented for decision is the constitutionality of the act No. 11 of 1875, vel non f
If the act No. 3 of 1874 stood alone, it could not be seriously doubted that until its terms were accepted by the holders of the obligations of the State, the proposition therein made might be withdrawn by the State. But the fact is, act No. 3 of 1874 and the constitutional amendments form parts of one proposition, which was submitted to the holders of obligations of the State, without any limitation as to the time in which it could be accepted by them. This is apparent from a history of act No. 3 and the constitutional amendments. Act No. 3 was approved on the twenty-fourth of January, 1874. Act No. 4 of the same Legislature, proposed the constitutional amendments and ordered their submission to the voters for ratification.' It also was approved by the Governor on the twenty-fourth of January, 1874. The objects of act No. 3 are clearly indicated by its title; it is “an act to provide for funding obligations of the State by exchange for bonds; to provide for principal and interest of said bonds; to establish a board of liquidation; to authorize certain judicial proceedings against it; to define and punish violations therefor; to levy a continu *584 ing tax and provide a continuing appropriation for said bonds; to make a contract between the State and holders of said bonds; to prohibit injunctions in certain cases; to limit the indebtedness of the State, and to limit State taxes; to annul certain grants of State aid; to prohibit the modification, novation or extension of any contract heretofore made for State aid; to provide for the receipt of certain warrants for certain taxes, and to repeal all conflicting laws.”
The amendments to the constitution are as follows: “ The issue of consolidated bonds, authorized by the General Assembly of the State, at its regular session in the year 1874, is hereby declared to create a valid contract between the State and each and every holder of said bonds, which the State shall by no means and in no wise impair. The said .bonds shall be a valid obligation of the State in favor of any holder thereof, and no court shall enjoin the payment of the principal and interest thereof, or the levy and collection of the tax therefor ; to secure such levy, collection and payment, the judicial power shall be exercised when necessary. The tax required for the payment of the principal and interest of said bonds shall be assessed and collected each and every year, until the bonds shall be paid, principal and interest, and the proceeds shall be paid by the Treasurer of the State to the holders of said bonds as the principal and interest of the same shall fall due, and no further legislation or appropriation shall be requisite for the said assessment and collection and for such payment from the treasury.
No. 2. “Whenever the debt of the State shali have been reduced below twenty-five million dollars, the constitutional limit shall remain at the lowest point reached, beyond which the public debt shall not thereafter be increased ; and this rule continue in operation until the debt be reduced to fifteen million dollars, beyond which it shall not be increased. Nor shall taxation for all State purposes, excepting the support of public schools, ever exceed twelve and a half mills on the dollar of the assessed valuation of the real and personal property in the State, except in case of war or invasion.”
Thus it appears that on the same day the General Assembly passed act No. 3 and act No. 4, that on the twenty-fourth of January the Governor approved both bills. The act No. 3 levies an annual and continuing tax to pay the interest and principal of the consolidated bonds; and the amendment declares that “the tax required for the payment of the principal and interest of said bonds shall be paid,” etc., “and no further legislation or appropriation shall be requisite for the said assessment and collection and for such payment from the treasury.” This clearly refers to the legislation contained in act No. 3, for no assessment or appropriation is made in the amendment.
*585 Again, section 6 of the act No. 3 requires the board to publish a notice of the adoption of this act, in one or more journals of New Orleans, New York, London, Paris and Amsterdam. In November, 1874, at a general election in the State, the constitutional amendments were adopted, with a full knowledge of the legislation contained in act No. 3 and said amendments. These amendments were intended to guarantee the performance of the obligations of the State, stipulated in act No. 3.
The adoption of the amendments was tantamount to saying that there was no limitation of time within which the creditors of the State should accept her proposition. The State, alleging her inability to pay the whole of her indebtedness, but protesting her willingness to pay her just debts to the full extent of her ability, offered a compromise to said creditors; and, as a guarantee against repudiation, made such amendments to her constitution, with the approval of the people, as was deemed sufficient to insure the prompt and punctual'payment of the novated debts in defiance of the will or caprice of any and all future legislatures.
The plain intendment; and spirit of the constitutional amendments are the enforcement of the obligations stipulated in the act No. 3. Section II of said act declares, “that each provision of this act shall be, and is hereby declared to be, a contract between the State of Louisiana and each and every holder of the bonds issued under this act.”
Millions of the obligations of the State had been novated under this law, before the passage of act No. 11. This last act changed several provisions of act No. 3. For this, if for no other reason, the act is unconstitutional. If one part of the act can be altered’, any other provision thereof may be changed, and the outstanding obligations might be novated on terms more favorable to the creditors than those proposed in act No. 3, which would be a breach of good faith to those who had funded their debts, on the supposition that all the outstanding obligations of the State were to be funded on the same terms. Or section 7 of act No. 3 might be repealed, which is the only law levying a tax and making an appropriation for the payment of the interest and principal of the consolidated bonds, when due, and thus practically defeat the object of the constitutional amendments, to wit, the prevention of repudiation.
I conclude that act No. 3 is irrepealable, and that act No. II, approved May, 1875, is unconstitutional, and that the mandamus should be made peremptory. I therefore dissent from the opinion of the court in this case.